*In re* McCOMBS

Docket No. 92435. Submitted February 12, 1987, at Detroit. Decided March 18, 1987.

The Department of Social Services filed a petition in the Wayne Probate Court seeking to terminate the parental rights of Jackie McCombs over her infant daughter. The court, James E. Lacey, J., granted the petition and placed the child in the permanent custody of the court after finding that (1) respondent is unable to provide proper care and custody for the child for a period in excess of two years because of a mental deficiency or mental illness, without a reasonable expectation that respondent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child, and (2) the child has been in foster care in the temporary custody of the court on the basis of a neglect petition for a period of at least two years and upon rehearing respondent failed to establish a reasonable probability that she will be able to reestablish a proper home for the child within the following twelve months. Respondent appealed.

The Court of Appeals *held:*

1. The probate court erred in admitting into evidence the testimony of Dr. Kilaru, one of several psychiatrists who had treated respondent. Section 11 of the Child Protection Law, MCL 722.631; MSA 25.248(11), abrogates the psychiatrist-patient privilege where a report of child abuse or neglect is required under the act or where the communications subject to the privilege are offered as evidence of neglect or abuse. Such was not the case here nor did respondent waive the privilege.

2. However, even without the testimony of Dr. Kilaru, there was clear and convincing evidence to support the termination

REFERENCES

Am Jur 2d, Parent and Child §§ 34 *et seq.*

Am Jur 2d, Physicians, Surgeons and Other Healers §§ 166 *et seq.*

Am Jur 2d, Witnesses §§ 238, 246, 247, 253, 258-264.

Physician's tort liability for unauthorized disclosure of confidential information about patient. 48 ALR4th 668.

Validity, construction, and application of statute limiting physician-patient privilege in judicial proceedings relating to child abuse or neglect. 44 ALR4th 649.

of respondent's parental rights. Testimony by other witnesses established that respondent has spent most of her adult life in psychiatric wards of various institutions or in foster care homes, has had minimal contact and poor interaction with the child, and is unable to take care of her own physical needs, much less those of the child.

Affirmed.

1. PARENT AND CHILD — CHILD ABUSE — CHILD PROTECTION LAW — PRIVILEGED COMMUNICATIONS.

The section of the Child Protection Law which provides that the legally recognized privileged communication between a psychiatrist and his patient is abrogated only applies where a report of suspected child abuse or neglect is required under the act or where the communications subject to the privilege are offered as evidence of abuse or neglect in a child protective proceeding (MCL 722.631; MSA 25.248[11]).

2. PARENT AND CHILD — APPEAL — TERMINATION OF PARENTAL RIGHTS.

The standard of review in cases involving termination of parental rights is whether the findings of the probate court are clearly erroneous; a finding is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.

*John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division Research, Training and Appeals, and *Brigid V. Marley,* Assistant Prosecuting Attorney, for petitioner.

*Richard R. Harris,* for respondent Jackie McCombs.

*Catherine H. Gardner,* for the minor child.

Before: SHEPHERD, P.J., and GRIBBS and R. R. LAMB,* JJ.

PER CURIAM. Following a permanent custody hearing, respondent mother's parental rights were

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

terminated under MCL 712A.19a; MSA 27.3178(598.19a). Although the absent father's rights were also terminated in this order, he has not appealed. Respondent mother appeals as of right. We affirm.

Baby Girl McCombs was born at William Beaumont Hospital on August 6, 1983. Four days later, Gail LaPage and Dr. A. Chuck from the hospital filed a report of actual or suspected child abuse or neglect on behalf of the girl. The report stated that Baby Girl McCombs was a normal baby infant, ready for discharge, but could not be discharged because her mother was a patient at Northville Regional Psychiatric Hospital. On August 11, 1983, the Department of Social Services filed a complaint in Oakland County Probate Court requesting that a petition be authorized. Subsequently, the case was transferred to Wayne County because respondent was a resident of that county. On August 22, 1983, a petition was filed in the Wayne County Probate Court requesting that the Juvenile Division take jurisdiction of the child.

On August 14, 1983, a hearing on the petition was held before a referee. At the conclusion of the hearing, the referee found, among other things:

(2). That the mother now resides in a specialized foster care home and receives counselling once every two weeks by Dr. Zahrullah.

(3). That the mother has been diagnosed as a schizophrenic and has been hospitalized, intermittently, for the past 23 years—since she was 15 and she is now 38 years old.

(4). That the mother is unable to care for herself nor is she able to care for a child; that mother needs supervision 24 hours a day; that she functions only marginally, even on the maximum amount of medication and that in the doctor's professional opinion, this mother will never, ever be able to care for a child.

On September 12, 1984, a petition for rehearing as to disposition was filed, requesting the court to terminate the parental rights and make the child a permanent ward of the court for purposes of adoption planning.

At the conclusion of the hearing the court terminated the parental rights of respondent and the father and made the child a permanent ward of the court. The probate court relied on MCL 712A.19a(c) and (f); MSA 27.3178(598.19a)(c) and (f) as the statutory bases for terminating respondent's parental rights.

I

WHETHER THE TRIAL COURT ERRED BY ADMITTING THE TESTIMONY OF RESPONDENT'S PSYCHIATRIST OVER HER OBJECTION BASED UPON THE PSYCHIATRIST-PATIENT PRIVILEGE.

Michigan provides for a psychiatrist-patient or psychologist-patient privilege. MCL 330.1750; MSA 14.800(750). Section 11 of the Child Protection Law, MCL 722.631; MSA 25.248(11), however, abrogates the psychiatrist-patient privilege in certain circumstances. In defining those circumstances, the Court in *In re Tedder,* 150 Mich App 688, 702; 389 NW2d 149 (1986), held:

> We do not believe that § 11 completely abrogates the psychologist-patient privilege in all child protective proceedings which may have originated by a report made pursuant to the Child Protection Law. Rather, in keeping with the intent of the Legislature to encourage the reporting of child abuse and neglect by all persons, OAG, 1978, No. 5297, p 430, 433 (April 28, 1978), we hold that § 11 abrogates a privilege only where a report is required under the act or where the communications subject to a privilege are offered as evidence of neglect or abuse in a child protective proceeding.

See OAG, 1978, No. 5406, pp 724-725 (December 15, 1978).

In this case, one Dr. Kilaru treated respondent while she was a patient at the Detroit Psychiatric Institute from August 22, 1984, to September 5, 1985. The hearing before Probate Judge Lacey was the first time Dr. Kilaru testified in this matter. It was a Dr. Zahrullah who testified before the referee. It was yet another doctor who signed the report of actual or suspected child abuse. Moreover, Dr. Kilaru did not examine respondent pursuant to any action under the Child Protection Law. Finally, respondent did not waive the privilege nor is there any evidence that she was ever informed by Dr. Kilaru that any communications made by respondent during her treatment with him would not be privileged.

It is our conclusion that the trial court erred by admitting the testimony of Dr. Kilaru over respondent's objection.

In ruling on the admissibility of the doctor's testimony, the trial court said that the doctor was mandated by the Child Protection Law to come forward and give testimony. The court then ruled:

However, the Court rules inasmuch as that testimony was permitted at the adjudication phase, actually is mandated under law to be for the safety of children during the continuing wardship following the adjudication hearing, that testimony is also admissible under the Child Protection proceedings for the safety of the children and to determine the risk to the children if left in the mother's home or returned to the mother's home.

So, under the Child Protection Act, that testimony is admissible and the patient/physician privilege which otherwise exists is abrogated by the Child Protection Act, so therefore the testimony is

admissible and your objection for reasons stated by the Court is denied.

Later on in the hearing, after it was brought to the court's attention by the attorney for respondent, Judge Lacey acknowledged that he was mistaken when he stated that Dr. Kilaru had also testified at the initial adjudication, when in fact it was a different doctor who testified at that time. Judge Lacey still allowed the testimony of Dr. Kilaru, saying:

> [B]ut that does not alter the Court ruling in any respect because the initial doctor testified according to the Child Protection Act on the field 3200 Suspected Child Abuse and Neglect, then the subsequent psychiatrist testified at the dispositional hearing which was caused by the original adjudication.

Thus, it would appear that the trial court believed that, under the Child Protection Law, once a particular doctor testified, any other doctor could testify. There is no support for such an interpretation of § 11.

The testimony of Dr. Kilaru does not fall within either of the two purposes of § 11 identified above in *Tedder, supra.* First, it was not claimed that the testimony was related to a report under the act. Second, the testimony of Dr. Kilaru was not offered as evidence of abuse or neglect in a child protective proceeding. The reason it was not *evidence* of neglect or abuse was that Dr. Kilaru had no knowledge of respondent's interaction with her child. He had only treated the mother. To be neglectful under the statute,

> respondent must have committed some act or omission which is blameworthy. We cannot assign

blame to one who is incapacitated by disease. [*In re McDuel,* 142 Mich App 479, 486; 369 NW2d 912 (1985).]

See also *Tedder, supra* at 699. Consequently, it was error to admit the testimony of Dr. Kilaru over respondent's objection. See also *In re Atkins,* 112 Mich App 528, 542-543; 316 NW2d 477 (1982), lv den 413 Mich 912 (1982). The minor child's reliance on *In re Baby X,* 97 Mich App 111; 293 NW2d 736 (1980), is misplaced for the reasons explained in *Tedder, supra* at 702-703. However, the remaining testimony, as discussed in the following issue, provides a sufficient basis for terminating respondent's parental rights without Dr. Kilaru's testimony. Thus, the error in admitting the testimony was harmless beyond a reasonable doubt.

II

WHETHER THE DECISION OF THE PROBATE COURT TERMINATING RESPONDENT'S PARENTAL RIGHTS WAS CLEARLY ERRONEOUS.

Judge Lacey terminated respondent's parental rights under both MCL 712A.19a(c) and (f); MSA 27.3178(598.19a)(c) and (f). These subsections provide:

Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

* * *

(c) A parent or guardian of the child is unable to provide proper care and custody for a period in excess of 2 years because of a mental deficiency or mental illness, without a reasonable expectation

that the parent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child.

\* \* \*

(f) The child has been in foster care in the temporary custody of the court on the basis of a neglect petition for a period of at least 2 years and upon rehearing the parents fail to establish a reasonable probability that they will be able to reestablish a proper home for the child within the following 12 months.

The clearly erroneous standard applies under this Court's review of the probate court's termination of respondent's parental rights. *In re Cornet,* 422 Mich 274, 277; 373 NW2d 536 (1985). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been made. *In re Riffe,* 147 Mich App 658, 671; 382 NW2d 842 (1985).

Even if Dr. Kilaru's testimony is excluded, it would be possible to establish through the testimony of the other witnesses that respondent suffered permanent mental deficiency or mental illness sufficient to meet the requirements of subsection (c). A review of the record, without considering the testimony of Dr. Kilaru, reveals that there was clear and convincing evidence to support the order of termination. This evidence was primarily presented through the uncontradicted testimony of Rachael Ruston and Cathy Adams. This testimony revealed that respondent has spent her entire adult life either in the psychiatric wards of various institutions or in regular or specialized foster care homes. The respondent has had only minimal contact with her child and this interaction has been poor. Respondent responds to imaginary

voices and acts out violent tendencies. Respondent has to be assisted in her bathing and in getting dressed. Respondent also needs help in eating her own food. Given that she is unable to take care of her own needs because of her mental condition, we are satisfied that she could not take care of the special needs of a baby.

Affirmed.