*In re* BROCK

Docket Nos. 141365, 141656. Submitted March 10, 1992, at Grand Rapids. Decided April 20, 1992, at 9:20 A.M. Leave to appeal granted, 440 Mich –.

The Department of Social Services initiated child protective proceedings in the Marquette Probate Court for the benefit of two minor children of Charles and Carol Brock, charging the Brocks with having sexually molested the children. Following trial, at which a videotaped interview of the older child conducted by an impartial psychologist was admitted into evidence, the jury returned a verdict finding probate court jurisdiction over both children. After a subsequent dispositional hearing, the court, Michael J. Anderegg, J., ordered the continuation of the children's placement in foster care. The respondents appealed separately, and their appeals were consolidated.

The Court of Appeals *held:*

1. The respondents' due process rights under US Const, Am XIV and Const 1963, art 1, § 20 were violated because the procedures employed in the videotaping of their child's testimony did not provide them an opportunity to confront the child face to face or to cross-examine the child.

2. The probate court erred in ruling that testimony by Carol Brock's physician and psychologist was admissible under the Child Protection Law, MCL 722.621 *et seq.*; MSA 25.248(1) *et seq.* The act, which abrogates all legally recognized privileges, except the attorney-client privilege, in child protective proceedings resulting from reports made pursuant to the act, does not apply in this case because the report of suspected sexual abuse to the DSS by the respondent's neighbor was not made pursuant to the Child Protection Law. Furthermore, the testimony of the physician and the psychologist did not relate to abuse or neglect of the children, but to Carol Brock's emotional state.

3. Before a videotaped disposition may be admitted in a child

REFERENCES

Am Jur 2d, Children and Infants §§ 1 *et seq.*; Constitutional Law § 849; Criminal Law §§ 721, 722, 957.

See the Index to Annotations under Children; Confrontation of Witnesses; Criminal Law.

abuse or neglect case in the probate court, the court must determine on the record that psychological harm to the witness would occur if the witness were to testify at the adjudication stage. MCL 712A.17b(9); MSA 27.3178(598.17b)(9). Because the question of psychological harm in this case was close, the DSS should be mindful that the statute requires a showing of psychological harm to the witness, and not to its case.

4. Testimony in which a physician recounted a statement by the older child that the father had inserted a finger in the child's rectum should not have been admitted as a hearsay exception for statements made for purposes of medical treatment or diagnosis. The child's statement appears to have been elicited not for medical purposes, but for purposes of gathering evidence against the respondents.

5. MCR 5.972(C)(2) provides that an out-of-court statement made by a child under ten years of age describing an act of child abuse performed with or on the child, not otherwise admissible under an exception to the hearsay rule, may be admitted in a child protective proceeding where the court, in a pretrial hearing, has found that the nature and circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness and that there is sufficient corroborative evidence of the act. In this case, the probate court did not make specific findings with regard to reliability or corroboration. The probate court should do so in the event of a retrial.

6. Testimony by a DSS worker recounting statements made to him by respondents' neighbor concerning the neighbor's suspicions of sexual abuse should not have been admitted because it was irrelevant and unfairly prejudicial. While the testimony was admitted for the limited purpose of establishing the DSS workers' state of mind, it served to bolster the older child's statements. Even if the DSS worker's state of mind were relevant, it could have been established with evidence that a report of suspected abuse was received.

Reversed and remanded.

PARENT AND CHILD — CHILD PROTECTIVE PROCEEDINGS — CONFRONTATION OF WITNESSES — CROSS-EXAMINATION.

A parent responding to a petition for child protective proceedings in the probate court has a compelling interest in the care, custody, and management of the child and may not be deprived of that interest without due process of law; the parent's due process rights are violated during trial where videotaped testimony of the child is presented under procedures that do not provide the parent with an opportunity to confront the child

face to face or to cross-examine the child (US Const, Am XIV; Const 1963, art 1, § 20).

*Gary L. Walker,* Prosecuting Attorney, and *Joni Brandon,* Assistant Prosecuting Attorney, for Department of Social Services.

*James E. Nancarro,* for the minor children.

*Murphy & Clark* (by *F. Gregory Murphy*), for Charles Brock.

*Peacock, Ingleson, Stenton, Elzinga & Maynard, P.C.* (by *Cheryl L. Hill*), for Carol Brock.

Before: FITZGERALD, P.J., and HOOD and CAV-ANAGH, JJ.

FITZGERALD, J. Respondents appeal as of right from (1) an adjudicative order of jurisdiction over their two daughters pursuant to a jury's finding and (2) a subsequent dispositional order placing the children in foster care. We are persuaded by respondents' constitutional challenge of the procedure employed in the trial phase, and reverse the orders of the probate court.

I

This case came to the attention of Department of Social Services workers after respondents' neighbor and occasional baby-sitter reported that the complainant, respondents' three-year-old child, was probably being sexually abused. According to a DSS employee, the neighbor noticed blood on complainant's sheets and irritation of complainant's vagina. In addition, complainant later made statements to several persons, including the neighbor, that both respondents had hurt her private

parts. On other occasions, complainant denied that this was true.

Before trial, and over the objection of counsel for respondents, the court qualified Lieutenant Robin Presley as an expert on child abuse. Lt. Presley had recently received a master's degree in social work and had studied child abuse as an academic subject. However, she had never worked with child witnesses in court and had never testified in court.

Lt. Presley spoke with complainant for two to three hours before testifying at a pretrial hearing on petitioner's motion for a videotaped deposition. Lt. Presley opined that complainant would be traumatized if she either faced respondents or appeared in court. Lt. Presley stated that although she had never seen a child witness testify, she based her conclusion that complainant would suffer psychologically on information she had accumulated as a student. Lt. Presley recommended that complainant be interviewed on videotape and that the interview be conducted by a trained, impartial questioner. She further stated that if complainant were examined by anyone not academically trained in dealing with victims of child abuse, complainant would be traumatized. In addition, Lt. Presley suggested that if forced to testify in open court, complainant would testify differently than if she were questioned out of court by a trained questioner. Lt. Presley stated that complainant had not yet begun therapy sessions because the court proceedings had not been completed. She admitted on cross-examination that she had no reason to believe that complainant feared her parents.

The court allowed the interview to take place as proposed by Lt. Presley in the interest of obtaining the "most complete" testimony possible. Respon-

dents' attorneys were not allowed to be present in the interview room or to directly pose questions to complainant, but they were permitted to submit questions in advance and to confer during breaks with the interviewer, a licensed psychologist.

At the first interview, which took place in March 1991, complainant was given dolls equipped with genitalia and asked to identify various body parts. She referred to the penis, vagina, and rectal area as "pookeys." Complainant denied that anyone had ever touched or hurt her pookey. When asked to draw a picture of herself, she drew a picture of a sad little girl who missed her parents.

Subsequently, the court granted petitioner's motion for a second videotaped interview, which was held after complainant began therapy. The interviewer began by reminding complainant that they had been in the interview room the day before. This time, complainant stated and indicated that her father had put his finger in her pookey (pointing to a doll's and to her own vagina) and that her mother had "poked" her pookey. However, she said that when she told her parents to stop, they did. No one touched her "pookey on her back" (complainant's attention being drawn to the doll's rectal area). At first, complainant denied that anyone had touched her little sister's pookey, but she then stated that respondents had done so. After a break in the interview, complainant again was questioned about having her pookey touched by her parents. She stated that her clothes were on when her parents touched her pookey. After further prodding, complainant became impatient, and she stated that she had already answered and wanted to go home. Although she resisted discussing further questions about her pookey, she became absorbed in drawing pictures. In response to a question whether she was afraid of her parents,

complainant answered "No." Complainant stated that she would like to go back to living with her parents. She denied that she talked to other persons, including DSS workers and her foster parents, about her pookey. She also denied any recollection of having been examined by a doctor. Later, the interviewer removed the toys from complainant and asked her again about her pookey being touched. Complainant, after saying that she did not want to talk about it, stated that it had happened while she was living with her parents.

Major Gregory Toussaint, M.D., Chief of Pediatrics at Sawyer Air Force Base, was qualified as an expert in pediatrics and child sexual abuse. Major Toussaint had examined complainant at the request of the DSS in December 1990, and he stated that while the appearance of complainant's vagina was unremarkable, her rectum displayed signs of having been penetrated repeatedly. Major Toussaint stated that he had no doubt that such penetration had occurred, and he estimated that complainant's rectum had been penetrated frequently. This conclusion was based on several observations. First, Major Toussaint stated that his examination of complainant's rectum, performed while complainant was kneeling, indicated an absence of the "anal wink," a reflexive opening and closing of the sphincter that occurs after the buttocks are parted. Instead, complainant's anus remained "gaping." Second, there was redness around complainant's rectum. Third, complainant had decreased sphincter tone. Major Toussaint opined that such a condition would not result from passing hard stools or from the insertion of a rectal thermometer. In addition, Major Toussaint reported that he inserted a gloved finger into complainant's rectum and asked, "Does anyone ever do this to you?" Complainant responded without

hesitation: "Daddy puts his finger in my pookey." He did not conduct more extensive questioning because the DSS was planning to do a more formal interview. Major Toussaint conducted a second examination in April 1991, during which he observed that the condition of complainant's rectum had returned to normal. Finally, Major Toussaint stated that his vaginal and rectal examination of complainant's sister indicated nothing unusual, but he cautioned that a normal examination does not necessarily mean that no abuse has occurred.

In addition to the statement to Major Toussaint described above, several inculpatory hearsay statements by complainant to other persons were admitted against respondents. These included statements to the neighbor who first contacted the DSS, to complainant's foster mother, and to a social worker. According to the testimony of the children's foster mother, complainant stated that her father had "made water" on her pookey, that it had hurt, and that she had cried. In addition, while complainant told social workers that her father had not hurt her pookey, she also stated that her father had told her to say that. Complainant also responded "Yes" to questions whether Santa Claus and a social worker had hurt her pookey.

The jury deliberated five hours before returning a verdict that the probate court had jurisdiction over both children.

At the subsequent dispositional hearing, respondent-father unsuccessfully requested the court to return his daughters to his custody on the basis of two successful polygraph tests and a Minnesota Multiphasic Personality Inventory (MMPI) examination placing him in the "normal" range. In addition, the court rejected a similar request by respondent-mother. Both requests were supported

by the opinion of a psychologist. The court indicated that it would not disregard the jury's determination and ordered the continuation of the children's placement in foster care.

## II

Respondents contend that the procedure adopted by the probate court to secure the testimony of complainant violated their due process rights under the state and federal constitutions.[1]

The court recognized the novelty of the procedure adopted during the trial. While acknowledging the potential for error, the court determined that the jury's need to view "the most complete testimony of the child" justified eliminating examination of complainant by the parties in favor of an impartial psychiatrist or psychologist.

This Court recently examined this issue in *In re Vanidestine,* 186 Mich App 205, 209-211; 463 NW2d 225 (1990). In that case, this Court reviewed a challenge of the use of closed-circuit television testimony in a juvenile proceeding brought under MCL 712A.2(a)(1); MSA 27.3178(598.2)(a)(1), in which a jury determined that the respondent had perpetrated criminal sexual conduct against a child. The Court concluded that constitutional standards had been satisfied, citing *Maryland v Craig,* 497 US —; 110 S Ct 3157; 111 L Ed 2d 666, 683-685 (1990) (requiring particularized proof of trauma or emotional distress exceeding mere nervousness, excitement, or reluctance to testify that is attributable to the presence of the alleged perpetrator). The Court stated that "even where the standard of particularized necessity has been satisfied, the alternate procedure employed . . . must still protect the 'essence' of the defendant's Sixth

---

[1] US Const, Am XIV; Const 1963, art 1, § 20.

Amendment right to confrontation." *Vanidestine, supra,* p 210. This requires that respondents be afforded the opportunity to conduct "rigorous adversarial testing." *Id.,* quoting *Craig, supra,* 111 L Ed 2d, p 686.

The applicability of the right of cross-examination in this case is not obvious, because the Confrontation Clause, by its terms, applies only to criminal proceedings.[2] In addition, our Supreme Court has emphasized that child protective proceedings and criminal actions are fundamentally different in nature, the focus of the former being the welfare of the child rather than the criminal culpability of the adult. *People v Gates,* 434 Mich 146, 161; 452 NW2d 627 (1990).

Nevertheless, the United States Supreme Court has extended the protections of the Confrontation Clause, in the name of due process, in noncriminal cases where significant interests were at stake. See, e.g., *Willner v Committee on Character & Fitness,* 373 US 96; 83 S Ct 1175; 10 L Ed 2d 224 (1963) (denial of bar membership for lack of certification of character and fitness without a hearing and without an opportunity for confrontation and cross-examination). Furthermore, despite the fact that a parent in a neglect or abuse proceeding is not subject to criminal punishment (as a juvenile, like in *Vanidestine,* or as an adult), Michigan courts have accorded great respect for parental rights. This Court has determined that due process requirements "are much greater" in termination cases than in ordinary civil actions and that such requirements include the parent's right to be represented at the dispositional hearing. *In re Render,* 145 Mich App 344, 348-350; 377 NW2d 421

---

[2] The Confrontation Clause, US Const, Am VI, provides:

    In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . .

(1985). In *Render,* we applied the balancing test
set forth in *Matthews v Eldridge,* 424 US 319, 335;
96 S Ct 893; 47 L Ed 2d 18 (1976), and applied in
the termination context in *Santosky v Kramer,*
455 US 745, 754-756; 102 S Ct 1388; 71 L Ed 2d
599 (1982). In particular, we balanced the private
interest at stake, the incremental risk of an erro-
neous deprivation thereof in the absence of the
procedure demanded, and the government's inter-
est in avoiding the burden the procedure would
carry. *Render, supra,* pp 348-349. We concluded
that the respondent's due process rights had been
violated under both the federal and state constitu-
tions. *Id.,* p 349, n 1.

In this case, we believe that the scale tips in
respondents' favor. First, respondents' parental
rights constitute a compelling interest. See *Ren-
der, supra,* pp 347-348; *Santosky, supra,* p 753
(parents have a fundamental liberty interest in the
care, custody, and management of their child). To
be sure, this case is different from *Render,* because
the challenged procedure in that case occurred at
the dispositional phase and involved the possibility
of termination. Here, respondents' interests were
affected at the trial stage. While it can be argued
that the parental interest is less compelling in this
case, the results of the trial nevertheless led to the
placement of the children in foster care after the
first dispositional hearing. This latter decision,
which the court below felt compelled to make out
of respect for the jury's finding of jurisdiction,
clearly affected respondents' parental liberty inter-
ests. In our opinion, respondents' interest remains
compelling.

The next factor is the incremental risk of an
erroneous deprivation of this interest when par-
ents are denied the opportunity of adversarially
testing the child's testimony. As in *Render,* it is

impossible to tell in this case whether cross-examination would have aided respondents' cause; however, in light of the United States Supreme Court's repeated and consistent pronouncements that the right of cross-examination inherent in the Confrontation Clause promotes reliability, this factor weighs in favor of respondents. See *Craig, supra,* 111 L Ed 2d 678-679; *Kentucky v Stincer,* 482 US 730, 739; 107 S Ct 2658; 96 L Ed 2d 631 (1987); *Lee v Illinois,* 476 US 530, 540; 106 S Ct 2056; 90 L Ed 2d 514 (1986). Against this backdrop, the opinion of Lt. Presley that the reliability of complainant's testimony would be compromised if complainant were required to testify before a jury or in the presence of her parents does not change the analysis of this factor. We also note that Michigan law generally relaxes the procedural protections after trial. See, e.g., MCR 5.911, 5.972 (providing for the right to trial by jury and for the applicability of the rules of evidence at the trial stage). We recognize the enormous difficulties confronting all parties with regard to the testimony of young victims in child sexual abuse cases. Until the Supreme Court makes clear that the right of cross-examination as well as the right of face-to-face confrontation may be disregarded in favor of some other equally, or perhaps more reliable, procedure than our constitution and adversarial system currently require, we must assume that *testimony,* particularly videotaped testimony (as opposed to certain classes of hearsay statements) must be subject to cross-examination in order to be considered reliable.

Finally, the burden on the state is negligible. The administrative burden of allowing cross-examination, given that respondents may demand a full-blown jury trial, is minute at best. Taking this case as an example, respondents' attorneys could have asked questions of complainant directly dur-

ing the videotaped deposition with no noticeable inconvenience. The state's interest also encompasses a need to reach accurate results for the protection of the child. Given the Supreme Court's faith in the superior truth-finding value of adversarial testing, we conclude that this governmental interest was not advanced by the procedure used in this case.

In sum, because no opportunity for face-to-face confrontation or cross-examination was provided respondents, we conclude that respondents' federal and state due process rights were violated.[3] We

---

[3] We note that the language of the statute allowing videotaped depositions does not appear to authorize the procedure adopted in this case. MCL 712A.17b(9); MSA 27.3178(598.17b)(9) provides that, if psychological harm would occur if the witness were to testify in court, the court may order a videotaped deposition of the child "which shall be admitted into evidence at the adjudication stage instead of the live testimony of the witness." That section also provides that "[t]he examination and cross-examination of the witness in the videotape deposition shall proceed in the same manner as permitted at the adjudication stage."

The right of cross-examination is not specifically described, either in the statute or in the court rules. However, MCR 5.971, which addresses pleas or admissions of no contest to the original charge in the petition, is instructive. MCR 5.971(B)(3)(d) requires the court to advise the respondent on the record that if the plea is accepted, the respondent will give up the right to cross-examine witnesses. Moreover, MCR 5.972(C)(1) provides that the rules of evidence applicable in a civil proceeding shall apply except as otherwise set forth in the court rules. MRE 611(b) provides: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. The judge may limit cross-examination with respect to matters not testified to on direct examination." The court rules do not provide for the inapplicability of MRE 611.

In addition, we observe that the court rule relied on by the court and petitioner to justify substituting an impartial examiner for respondents' attorneys appears to authorize this procedure only "at a *hearing*," not at trial. MCR 5.923(E). "Hearings" in a child protective proceeding include the preliminary hearing, MCR 5.965, the initial dispositional hearing, MCR 5.973(A), dispositional review hearings, MCR 5.973(B), the permanency planning hearing, MCR 5.973(C), the emergency removal hearing, MCR 5.973(E), and the hearing on a petition for termination of parental rights, MCR 5.974(F)(1)(b). MCR 5.973, which addresses trials, does not use the word "hearing," and MCR 5.992(A), which addresses rehearings, differentiates between a "rehearing" and a "new trial."

further believe that such an error cannot be considered harmless, particularly in light of complainant's youth, the inconsistencies in her statements, and the evidence that she had discussed this subject with several people. Therefore, respondents are entitled to reversal on this ground.

III

We also agree with respondent-mother's claim that the probate court violated the psychologist-patient and physician-patient privileges. Both privileges are creatures of statute. MCL 600.2157; MSA 27A.2157 provides:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon. If the patient brings an action against any defendant to recover for any personal injuries, or for any malpractice, and the patient produces a physician as a witness in the patient's own behalf who has treated the patient for the injury or for any disease or condition for which the malpractice is alleged, the patient shall be considered to have waived the privilege provided in this section as to another physician who has treated the patient for the injuries, disease, or condition. If a patient has died, the heirs at law of the patient, whether proponents or contestants of the patient's will, shall be considered to be personal representatives of the deceased patient for the purpose of waiving the privilege under this section in a contest upon the question of admitting the patient's will to probate.

Because this analysis has not been presented squarely to the probate court or on appeal, we decline to base our holding on this ground.

The psychologist-patient privilege, MCL 330.1750; MSA 14.800(750) (§ 750 of the Mental Health Code), provides in pertinent part:

> (1) For purposes of this section:
>
> *      *      *
>
> (c) "Privileged communication" means a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, or to another person while the other person is participating in the examination, diagnosis, or treatment.
>
> *      *      *
>
> (2) Privileged communications shall not be disclosed in civil, criminal, legislative, or administrative cases or proceedings, or in proceedings preliminary to such cases or proceedings, unless the patient has waived the privilege, except in the circumstances set forth in this section.

In addition, § 750(4) forbids disclosure even of the *fact* of treatment, examination, or diagnosis if not relevant to the rights and liabilities of a health care entity.

The court admitted the testimony by these two professionals pursuant to § 11 of the Child Protection Law (CPL), MCL 722.621 *et seq.*; MSA 25.248(1) *et seq.*, which provides:

> Any legally recognized privileged communication except that between attorney and client is abrogated and shall neither constitute grounds for excusing a report otherwise required to be made nor for excluding evidence in a civil child protection proceeding resulting from a report made pursuant to this act. [MCL 722.631; MSA 25.248(11).]

By the clear terms of this section, the evidence that respondent-mother sought to suppress does

not fall within this exception. First, this case does not involve a "child protection proceeding *resulting from a report made pursuant to*" the CPL. This case "resulted" from a report made by respondents' neighbor, who reported suspected sexual abuse to the authorities. There is no evidence that the neighbor's report was made pursuant to the CPL or that the neighbor was one of the persons upon whom § 3 of the CPL, MCL 722.623; MSA 25.248(3), places an obligation to report.

In *In re Tedder,* 150 Mich App 688, 701-703; 389 NW2d 149 (1986), this Court interpreted § 11 to allow the abrogation of a privilege "only where a report is required under the act or where the communications subject to a privilege are offered as evidence of neglect or abuse in a child protective proceeding." Although *Tedder* appears to enlarge the exception beyond the apparent scope of the statutory language, any conflict between *Tedder* and the statute is not material in this case because the evidence at issue here was not "evidence of neglect or abuse." The evidence presented by respondent-mother's psychologist and physician indicated only that she had been depressed, that she had been prescribed medication, that she wrote a note that might have been construed as a suicide note (though not that she actually attempted to commit suicide), and, generally, that she had experienced emotional difficulties. See also *In re McCombs,* 160 Mich App 621, 625-627; 408 NW2d 401 (1987), in which this Court held that testimony of a psychiatrist at a termination hearing did not fall within § 11 where (1) it was not related to a report under the CPL and (2) it was not evidence of abuse or neglect because the psychiatrist had treated only the respondent and had no knowledge of the respondent's interaction with the child. Although we found the error harmless in

*McCombs,* that case is factually distinguishable from this case because (1) the probate court in *McCombs* already had jurisdiction over the child, whereas in this case the privileged testimony improperly admitted may have influenced the jury's decision, and (2) there was overwhelming evidence in *McCombs* of the respondent's inability to care for the needs of herself and her child. *Id.,* pp 628-629.

We therefore conclude that § 11 did not suspend the respondent-mother's privileges and that the court should have suppressed the testimony.[4]

IV

We briefly address several other issues for the benefit of the parties, should petitioner seek a new trial on remand. In light of our rulings in parts II and III of this opinion, we decline to decide whether respondents are independently entitled to reversal on any of these issues.

A

Before a videotaped deposition may be admitted in an abuse or neglect case in probate court, the court must determine on the record that "psychological harm to the witness would occur if the witness were to testify at the adjudication stage . . . ." MCL 712A.17b(9); MSA 27.3178(598.17b)(9). The only case interpreting this particular provision is *Vanidestine, supra,* pp 211-212, in which

---

[4] We reject petitioner's suggestion that respondent-mother waived these privileges. The court below agreed that the release respondent-mother executed was for the limited purpose of allowing review of some of her records by the guardian ad litem but not for the purpose of allowing her psychologist and physician to testify at trial. The prosecution has not cross-appealed this determination, and the record does not contain the document alleged to have constituted a full waiver.

this Court reviewed recent Confrontation Clause cases from the United States Supreme Court and concluded that the trial court's consideration of several factors (including the age of the child, the maturity of the child, the nature of the offense, the child's emotional condition, and the testimony of what appears to have been an expert witness) was sufficient to satisfy the constitutional requirement of a particularized necessity justifying the absence of face-to-face confrontation. The Court did not reach the issue whether the statutory requirements had been satisfied. We find *Vanidestine* instructive with regard to this issue, even though the liberty interest at stake in this case is not the loss of respondents' personal freedom but the loss of the care, custody, and companionship of their children. As we have already stated, this parental interest is a very compelling one.

In this case, the probate court credited Lt. Presley's opinion that psychological harm would occur and concluded that a sufficient basis for a finding of psychological harm existed. The court further accepted Lt. Presley's opinion that harm would occur even if respondents were not present in the courtroom. In our opinion, the issue whether an adequate showing of psychological harm was made is a close call. Lt. Presley took into consideration only the age of the child and the nature of the subject matter. Intermingled with Lt. Presley's opinion regarding the trauma of testifying were suggestions that complainant might be reluctant to make inculpatory statements in court. If petitioner again determines to seek jurisdiction over the children, we remind it that Michigan procedure requires a showing of psychological harm to the particular witness, not harm to petitioner's case.

B

Next, respondents have challenged the admissibility of several hearsay statements by complainant.

Where the admissibility of evidence is disputed, the burden of establishing a proper foundation rests with the party seeking admission. *People v Burton,* 433 Mich 268, 304, n 16; 445 NW2d 133 (1989). Foundational elements of fact must be proven by a preponderance of the evidence. *Id.,* p 296; MRE 104(a). The trial court is not restricted to considering admissible evidence in ruling on the admissibility of evidence under MRE 104(a). *Burton, supra,* p 295.

First, with regard to statements identifying the perpetrator of sexual abuse to medical personnel, we note that this Court is split with regard to the issue whether such statements are admissible. Compare *People v Meeboer,* 181 Mich App 365; 449 NW2d 124 (1989), lv gtd 436 Mich 880 (1990) (statements made to medical personnel identifying perpetrator admissible), with *People v Conn (On Remand),* 182 Mich App 13; 451 NW2d 555 (1990), lv gtd 436 Mich 880 (1990) (statements not admissible). While our Supreme Court has agreed to consider this issue, we note that according to binding precedent from this Court, where the challenged statement is not made in connection with treatment, it is not admissible. *People v Mosko,* 190 Mich App 204, 207-208; 475 NW2d 866 (1991). Here, the examining physician stated that the reason he asked complainant during the rectal examination whether anyone else had done this to her was because no one else was going to insert a finger in complainant's rectum. This suggests that the statement may have been elicited not for medical, but for evidentiary, purposes.

Next, respondents challenge several statements

by complainant to a social worker and to her foster mother under MCR 5.972(C)(2). This section allows the admission of statements made by a child under ten years of age describing an act of child abuse, provided that the court determines after a pretrial hearing that

> the nature and circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness, and that there is sufficient corroborative evidence of the act.

This Court recently released its first decision applying this rule to accusatory statements of a young child in a sexual abuse case. *In re Brimer,* 191 Mich App 401; 478 NW2d 689 (1991). In *Brimer,* we determined that the lower court did not err in finding at a pretrial hearing that statements by a three-year-old (1) bore adequate indicia of trustworthiness because they were consistent and were made with no apparent motive to fabricate, and (2) were corroborated by evidence that the child had been rubbing her vagina before making the first statements, that she became hysterical whenever a physician attempted to examine her, and that she had bruises on her back and buttocks. *Id.,* pp 405-406. The Court cited *Idaho v Wright,* 497 US —; 110 S Ct 3139; 111 L Ed 2d 638, 655-659 (1990), in determining how to analyze the reliability prong of this rule. The reliability of statements depends on the totality of the circumstances surrounding the making of the statement. Relevant circumstances may legitimately include spontaneity and consistent repetition, the mental state and motive of the complainant, and the use of terminology unexpected from a child of similar age. *Brimer, supra,* p 405.

In this case, the lower court did not make spe-

cific findings regarding either reliability or corroboration. Thus, it is impossible to determine whether the court considered proper factors in ruling on respondents' motions to suppress the statements. We note that complainant did not consistently state that her father hurt her pookey, that not all of her statements were spontaneous, and that she did not use terminology unexpected from a young child. While there was no apparent motive for fabrication, there was evidence of intervening discussion of the allegations with adults. See *Wright, supra,* 111 L Ed 2d 659-660. In the event of retrial, the court should make specific findings on the relevant factors.

Finally, a DSS worker testified regarding several hearsay statements made by respondents' neighbor, some of which contained statements of complainant. In particular, the neighbor stated (1) that there had been blood on complainant's sheets, (2) that complainant told her that her pookey hurt, (3) that complainant's vagina was red and swollen, and (4) that complainant later told her that "daddy puts his finger in my pookey." The neighbor did not testify at trial. The court admitted these statements, over respondents' hearsay objection, for the purpose of showing why the DSS worker did what he did, and not for the truth of the matter asserted. Respondents did not object on the basis of relevancy.

In *People v Wilkins,* 408 Mich 69; 288 NW2d 583 (1980), our Supreme Court reversed a conviction of carrying a concealed weapon where the prosecution was permitted to introduce an unnamed informant's tip upon which the police later acted in apprehending the defendant. The Court observed that the statement was inadmissible whether viewed as hearsay or mere background evidence. The statement was both irrelevant under MRE

401, because the officer's state of mind or motivation for conducting an investigation was not a fact of any consequence, and unfairly prejudicial under MRE 403, because it pointed to the defendant's guilt.

While the judge cautioned the jury that the statement was to be viewed only for the purpose of explaining the DSS worker's state of mind, we believe that the effect of the testimony of what respondents' neighbor had said was to bolster complainant's other statements that her father had put his finger in her pookey. Even assuming that the DSS employee's state of mind was relevant, the mere evidence that a report of suspected abuse had been received would have served this purpose.

C

We find it unnecessary to address respondents' remaining issues.

V

For the reasons stated above, respondents are entitled to a new trial. We remand this case to the probate court for further proceedings consistent with this opinion. Jurisdiction is not retained.

Reversed and remanded.