COURT OF APPEALS

| | |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN, | UNPUBLISHED |
| | April 13, 2017 |
| Plaintiff-Appellee, | |
| | |
| v | No. 330139 |
| | Wayne Circuit Court |
| TERRILL LAVON CURTIS, | LC No. 15-004355-01-FC |
| | |
| Defendant-Appellant. | |

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Defendant, Terrill Lavon Curtis, appeals as of right from his convictions, following a jury trial, of assault with intent to commit murder, MCL 750.83, carrying a dangerous weapon with unlawful intent, MCL 750.226, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Curtis to serve concurrent terms of 17 to 35 years' imprisonment for his assault conviction and one to five years' imprisonment for his carrying a dangerous weapon with unlawful intent conviction, as well as a consecutive two-year term of imprisonment for his felony-firearm conviction. We affirm.

I. FACTUAL BACKGROUND

On June 11, 2014, Dajuan Allen was shot in Detroit. According to Allen, he went to a convenience store on Whittier, left the store, and ultimately stopped on Beaconsfield. A person came out from behind a building with a gun, said "what's up now," and shot him in the abdomen. Allen ran back to the store, asked others to call for help, and waited for an ambulance.

Detroit Police Officers Irvan Higgins and Robert Roby, Jr. responded to the call and went to the store. According to the officers, they asked Allen who shot him, and Allen answered, "Ray Ray." But Allen gave multiple, conflicting statements about whether he identified a shooter while at the store, testifying that he could tell police who shot him, that he did not answer police questions about the shooter's identity, and that he could not remember if he identified the shooter.

According to Allen, he was hospitalized after the shooting, and police officers came to speak to him. The officers showed Allen a photograph. Allen said it depicted Ray Ray or "Raymond" Curtis. Allen explained that he knew Ray Ray most of his life. At trial, Allen identified Curtis, whose first name is Terrill, as the shooter. Detroit Police Sergeant Matthew

-1-

Fulks testified that Curtis had a tattoo of the words "Ray Ray" on his hands, and Curtis showed his tattoos to the jury.

The jury found Curtis guilty as previously described.

## II.  AUTHENTICATION CLAIMS

Curtis argues that the trial court erroneously concluded that two pieces of evidence lacked authentication, the trial court erroneously prevented him from using the evidence, and that these errors warrant reversal.

"We review de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it." *People v Lane*, 308 Mich App 38, 52; 862 NW2d 446 (2014).  We review a trial court's decision to admit or exclude evidence for an abuse of discretion, which occurs when a trial court "chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009).  We do not reverse a conviction due to an evidentiary error unless it is more probable than not that the error affected the trial's outcome.  *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011).

Items must be authenticated before they can be admitted into evidence.  MRE 901(a).  Authentication occurs when there is "evidence sufficient to support a finding that the matter in question is what its proponent claims."  MRE 901(a).  The party offering the evidence must prove authentication by a preponderance of the evidence.  *In re Brock*, 193 Mich App 652, 669; 485 NW2d 110 (1992), rev'd on other grounds 442 Mich 101 (1993).

### A.  AERIAL MAP

Curtis argues that the trial court abused its discretion when it found that he could not authenticate an aerial map and prohibited him from using the map.  We disagree.

At the May 28, 2015 preliminary examination, Curtis admitted an aerial map of the area surrounding the shooting, asked Allen to mark the location of the store, asked Allen to mark the location of the shooting, and asked Allen to draw a line connecting the locations.  At trial, Curtis sought to admit a marked aerial map.  Allen confirmed that it was the same map but twice stated that he did not know if the markings were the ones he had made.  The trial court did not allow Curtis to admit the map as an exhibit or use it for an impeachment, reasoning that Allen "cannot identify that that is the document" from the preliminary examination, "testified very clearly that he doesn't recognize it," and "said something about the dots and the lines aren't his."

We conclude that the trial court did not abuse its discretion in concluding that Curtis did not authenticate the aerial map.  Allen could not determine whether the marks on the proposed trial exhibit were the same as the marks that he made on the preliminary exam exhibit.  Therefore, there is no evidence that the map offered was what Curtis purported it to be, and the trial court's outcome did not fall outside the reasonable and principled range of outcomes.

### B.  CRIME SCENE PHOTOGRAPHS

Curtis also argues that the trial court abused its discretion when it denied defense counsel's request to admit photographs of the crime scene because they established that the shooting occurred at a different location than where police investigated. We conclude that any error does not warrant reversal.

On the third day of trial, defense counsel notified the trial court of his intent to admit photographs that he took while an "investigator was present" that he claimed depicted "the scene at Beaconsfield." It is unclear when defense counsel took the photographs, but he admitted that it "would be impossible to say" that the photos accurately depicted the scene in June 2014. Defense counsel explained that he was unable to print the photos until the evening of the second day of trial, was unable to admit the photographs through witnesses offered on the third day of trial, and, therefore, he would need to call his investigator or "recall" an earlier witness to admit the photos. The prosecution objected to offering the exhibits, claiming that "they don't accurately depict the area back in 2014" and lacked "foundation." The trial court excluded the evidence for two reasons: (1) defense counsel had "adequate opportunity to show those photographs" to witnesses on the morning of the third day of trial, and (2) "there's no way to properly authenticate and identify them as accurately representing the topography of Beaconsfield and Whittier back in June of 2014."

To authenticate the photos, Curtis needed only to prove by a preponderance of evidence that the photographs were what he purported them to be. See MRE 901(a); *In re Brock*, 193 Mich App at 669. To lay foundation for the photos, Curtis needed only testimony from a person familiar with the scene photographed and having personal observations of the scene that the photographs accurately represented the scene. *Knight v Gulf & Western Props, Inc*, 196 Mich App 119, 133; 492 NW2d 761 (1992). And if the scene had changed, Curtis only needed testimony about the extent of the changes. *Id*.

Even if the trial court abused its discretion in concluding that Curtis could not authenticate the photos or lay adequate foundation, Curtis abandoned any argument that this error would have affected the outcome of the trial and required reversal. A party abandons an issue if he "merely announce[s] his position and leave[s] it to this Court to discover and rationalize a basis for his claims." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) (internal quotations and citations omitted). And Curtis failed to articulate how evidence that the shooting occurred on Beaconsfield would alter Allen's testimony that Curtis was the shooter or undermine any of the other elements required to sustain his convictions. Therefore, we will not reverse.

## III. DISCOVERY VIOLATION REMEDY

Curtis next argues that the trial court abused its discretion when it sanctioned him for violating the trial court's pretrial discovery order by prohibiting his use of social media evidence to impeach Allen and that this error warrants reversal. We disagree.

We review preserved claims regarding a trial court's discovery decisions for an abuse of discretion. *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997). We review unpreserved claims for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error occurs when there was (1) "error" (2) that was "clear or

obvious" and (3) "affected substantial rights." *Id.* A defendant's substantial rights are affected when he is prejudiced such that the "error affected the outcome of the lower court proceedings." *Id.* Further, this Court will only reverse "when the plain, forfeited error resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 763-764 (internal quotations, alterations, and citations omitted).

At trial, defense counsel indicated that he wanted to refresh Allen's memory and recollection with photographs from the social media site Pinterest. The prosecution objected, arguing that it had not seen the documents and, therefore, use of the documents violated the trial court's reciprocal discovery order. The discovery order stated that Curtis was to provide a "description of and an opportunity to inspect any tangible physical evidence that [he] may introduce at trial" and "copies of any document, photograph, or other paper, or evidence . . . in some electronic form" pursuant to MCR 6.201. The trial court found that Curtis violated the order and did not allow him to use the social media documents.

"MCR 6.201 governs discovery in criminal cases." *People v Phillips*, 468 Mich 583, 589; 663 NW2d 463 (2003). Under MCR 6.201(A), a party upon request must provide all other parties, among other things, "a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper." MCR 6.201(H) further states that parties must "promptly notify the other party" "without further request" upon discovery of "additional information or material subject to disclosure under this rule."

MCR 6.201(J) describes the possible remedies for discovery violations, stating that the trial court can "order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances." When choosing the appropriate remedy, "the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). Further, courts should consider "relevant circumstances" including " 'a showing by the objecting party of actual prejudice.' " *Davie*, 225 Mich App at 598, quoting *People v Taylor*, 159 Mich App 468, 482; 406 NW2d 859 (1987). And "the exclusion of otherwise admissible evidence is an extremely severe sanction that should be limited to egregious cases." *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 455 n 10; 722 NW2d 254 (2006).

Curtis preserved his argument on appeal that the remedy of prohibiting his use of the social media evidence was too severe. The record does not show that the trial court balanced the interests of the courts, the public, and the parties, determined the reason for Curtis's noncompliance with the discovery order, or found that the prosecution would suffer actual prejudice from use of the evidence. Therefore, it is unclear whether this case constitutes an egregious case warranting exclusion of the social media evidence.

Regardless, even if it does not, Curtis waived any argument on appeal that the social media documents should have been admitted when defense counsel conceded that he "wouldn't necessarily want to put [any posting] into evidence," "won't necessarily try to move them for

admissibility," and was "not trying to admit them into evidence." Waiver, defined as "the intentional relinquishment or abandonment of a known right," prevents appellate review. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (internal citations and quotations omitted).

Further, Curtis failed to preserve his argument that he should be able to use the social media evidence to impeach Allen at trial, and the trial court did not plainly err by excluding the evidence as a means of impeaching Allen. Curtis argues on appeal that the documents could have been used to impeach Allen, asserts that the documents could imply that Allen had a habit of using drugs every day, which would contradict Allen's testimony that he had not smoked on the day of the shooting, and argues that the documents would have been relevant to Allen's perception and identification of the shooter. But nothing in the lower court record indicates that the social media evidence shows drug use on the day of the shooting. See MCR 7.210(A). Therefore, we conclude that Curtis did not suffer prejudice from exclusion of the evidence. *Carines*, 460 Mich at 763.

## IV. PROSECUTORIAL MISCONDUCT

Curtis argues that he was denied a fair trial when the prosecution improperly denigrated the defense during closing arguments. We disagree.

Curtis failed to preserve this issue for appeal with an objection to the prosecutor's statements. See *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *Id*.

Prosecutors are " 'free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case.' " *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995), quoting *People v Gonzalez*, 178 Mich App 526, 535; 444 NW2d 228 (1989) (alteration in *Bahoda*). Remarks are improper and constitute prosecutorial misconduct requiring reversal when they deprive defendant of a fair and impartial trial. *People v Watson*, 245 Mich App 572, 594; 629 NW2d 411 (2001). We evaluate prosecutor comments "in context," "in light of defense arguments," and in relation to the evidence. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). The prosecution should not "suggest that defense counsel is intentionally attempting to mislead the jury," *Watson*, 245 Mich App at 592, denigrate a defendant, or make factual statements that are not supported by the evidence, *Bahoda*, 448 Mich at 282-283. But even an improper remark may not require reversal " 'when the prosecutor is responding to the defense counsel's argument.' " *Watson*, 245 Mich App at 593, quoting *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996).

In this case, the prosecutor stated during rebuttal that

You know, there has not been a first story. There was never a first story as counsel told you. There's been one story. There's been the only story. It's been the to [sic] truth for Mr. Allen. *People always go around they dig up all kind of subterfuge to try to gear you off especially when the witness has been consistent.* Not one time has Mr. Allen told anyone differently than what he testified to in this courtroom not once. Not ever. And, so, therefore, there's nothing left for the

defense. So what they did go, well, maybe, maybe, and maybe, and maybe, maybe. There's no maybe. Mr. Allen cleared all the maybes. [Emphasis added.]

Curtis argues that the prosecutor's statement that the defense was digging up "all kind of subterfuge to try to gear you off" improperly denigrated defense counsel.

But this sentence was in direct response to Curtis' closing argument. Curtis challenged Allen's memory of the "sequence of events," specifically, the locations he went to just before the shooting. Curtis argued that Allen, at one time, testified that he was at home, then went to his mother's home, then went to a Beaconsfield apartment, then went to talk to someone, and then went to the store. But Curtis argued that Allen also testified to a different sequence of events, testifying that he went to the store, "then went to Beaconsfield, and then was shot." Curtis asked the jury in closing arguments "what do you do about that first story versus the second."

The prosecution's closing also highlighted an exchange during Allen's cross-examination where Curtis attempted to compare the sequence of events that Allen testified to at the preliminary examination with the sequence of events that Allen testified to at trial. Curtis objected to an improper impeachment, and the trial court sustained the objection. We conclude that the prosecution's comments on rebuttal did not deny Curtis a fair trial because they directly responded to Curtis's arguments in closing and related to evidence presented at trial. Because of this direct response, the prosecutor's comments were not a plain or obvious error.

## V. PHOTOGRAPHIC LINE-UP IDENTIFICATION

Finally, Curtis argues that the prosecution violated his due process right to a fair trial when it introduced evidence of Allen's identification of Curtis as the shooter in a single photograph line-up procedure. Again, we disagree.

Curtis failed to preserve his challenge to the photographic identification procedure with an objection in the trial court. See *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001). Therefore, we review this unpreserved claim for plain error. *Id*.

Courts evaluate whether a single photograph identification procedure violates a defendant's due process rights based on the totality of the circumstances. *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169, aff'd 497 Mich 23 (2014). A violation may not occur when a single photograph is "used only to help confirm the identity of [a] person the witness had already identified." *Id*. at 457-458. But "[s]howing a witness a single photograph is . . . one of the most suggestive photographic identification procedures," and a due process violation occurs when the procedure is "so impermissibly suggestive that it creates a substantial likelihood of misidentification." *Id*. at 457.

If the identification violates due process, it may impermissibly taint subsequent identifications because of the danger that a witness could " 'base later identifications of the suspect upon that photograph, rather than on [the witness's] recollection of the crime.' " *People v Gray*, 457 Mich 107, 112; 577 NW2d 92 (1998), quoting *People v Kurylczyk*, 443 Mich 289, 321; 505 NW2d 528 (1993) (BRICKLEY, J., concurring in part and dissenting in part). In such a case, the trial court must hold an evidentiary hearing to determine whether the witness had an "independent basis" for the subsequent identification and weigh the eight factors specified by the

Michigan Supreme Court in *People v Kachar*, 400 Mich 78, 95-97; 252 NW2d 807 (1997). These factors include the witnesses' "[p]rior relationship with or knowledge of the defendant" and "[a]ny previous proper identification or failure to identify the defendant." *Id*. at 95. This Court has held that these two factors alone, establishing that the witness has a prior relationship with and identification of the defendant, can "establish[] an untainted, independent basis for" a subsequent identification. *Woolfolk*, 304 Mich App at 458.

In this case, the trial court did not plainly err. Officers Higgins and Roby testified that when they asked Allen in the store who shot him, he responded, "Ray Ray." Allen knew Curtis as Ray Ray. And Sergeant Fulks testified that Curtis had a tattoo of the words "Ray Ray" on his hands. Police did not show Allen a photograph until after this in-store identification. Therefore, the photographic identification was "used only to help confirm the identity of [a] person [Allen] had already identified." See *id*. at 457-458. In light of this evidence, we conclude that the trial court committed no clear or obvious due process violation.

Further, Curtis did not challenge the prosecution's request to admit the photograph as an exhibit, and a defendant may not "harbor error as an appellate parachute." See *People v Buie*, 491 Mich 294, 299; 817 NW2d 33 (2012) (internal citations and quotations omitted).

Finally, because Curtis failed to challenge the photographic identification procedure in the trial court, we have no evidentiary hearing to evaluate to determine whether Allen had an independent basis for his subsequent trial identification of Curtis as the shooter. But because there is evidence that Allen identified the shooter as Ray Ray before his photographic identification and because Allen testified that he knew Ray Ray most of his life, there was an untainted, independent basis for Allen's subsequent identification of Curtis as the shooter.

We affirm.

/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra