*In re* BROCK

(DEPARTMENT OF SOCIAL SERVICES v BROCK)

Docket Nos. 93874, 94184. Argued December 8, 1992 (Calendar No. 2). Decided April 14, 1993.

The Department of Social Services initiated child protective proceedings in the Marquette County Probate Court regarding the two minor children of Charles and Carol Brock on the basis of two reports of possible sexual abuse made by a neighbor who occasionally was a baby-sitter for the children. After a physical examination, the children were placed in foster care. The court, Michael J. Anderegg, J., acquired jurisdiction over the children following an adjudicative proceeding before a jury, and continued foster care in a subsequent dispositional hearing. During the adjudicative proceeding, following testimony by a clinical social worker that requiring the respondents' youngest child, who was almost four years old, to testify in court in the presence of her parents or to undergo cross-examination by counsel would cause the child psychological harm and might impair her future treatment, the court, pursuant to MCL 712A.17b(9); MSA 27.3178(598.17b)(9) and MCR 5.923(E), ordered the child's testimony to be taken by an impartial examiner on videotape. The Court of Appeals, FITZGERALD, P.J., and HOOD and CAVANAGH, JJ., reversed and remanded the case for a new trial, holding that, in the absence of cross-examination and face-to-face confrontation with their three-year-old child, the respondents' federal and state due process rights were violated (Docket Nos. 141365, 141656). The department appeals.

In an opinion by Justice RILEY, joined by Chief Justice CAVANAGH, and Justices BRICKLEY, BOYLE, GRIFFIN, and MALLETT, the Supreme Court *held:*

Where the probate court in a child protective proceeding makes particularized findings indicating that a child would suffer psychological trauma if forced to testify in court or if

REFERENCES

Am Jur 2d, Infants § 16; Witnesses §§ 457, 720.

Validity, construction, and application of statute limiting physician-patient privilege in judicial proceedings relating to child abuse or neglect. 44 ALR4th 649.

cross-examined by attorneys, the court may allow an impartial examiner to conduct a video interview in order to gather the most accurate and complete information. The Child Protection Law abrogates the physician-patient privilege where such evidence is offered in a civil child protective proceeding resulting from a report made pursuant to the act and is determined to be relevant to the proceeding.

1. Child protective proceedings are not criminal proceedings. Their purpose is to protect the child, not to determine the guilt or innocence of the defendant. While the Sixth Amendment right of confrontation applies in criminal prosecutions, it does not apply in this case.

2. Parents have a significant liberty interest in the companionship, care, and management of their children that is protected by due process. Although due process often requires confrontation and cross-examination, the requirement is not absolute. Due process requires fundamental fairness, determined by assessing the interests at stake. The state's interest in protecting the child from trauma is significant and primary. In this case, the court specifically found that the child would be traumatized if forced to testify with counsel present and would be incapable of testifying because of that trauma. The arrangements by the court, designed to permit the child to testify as completely as possible, although prohibiting cross-examination by the respondents, did not significantly increase the risk of erroneous deprivation of their liberty interest.

3. Section 11 of the Child Protection Law abrogates the physician-patient privilege where such evidence, determined to be relevant, is offered in a civil child protective proceeding resulting from a report made pursuant to the act, including a report made under § 4. Section 4 permits any person who has reasonable cause to suspect child abuse or neglect to report the matter. The report by the respondents' neighbor falls within § 4 and thus was a report made pursuant to the act. The probate court did not err in allowing the mother's physician and psychologist to testify regarding her history of emotional difficulties.

Reversed.

Justice LEVIN, dissenting, stated that cross-examination of a child in a parental rights termination proceeding by an impartial person, who is not supposed to be an advocate, does not comport with the requirements of due process.

The initial phase in which the probate court acquires jurisdiction of a child is critical. Once the court acquires jurisdiction, its decision at the dispositional phase is largely screened

from appellate review. Custody of a child who is found at the jurisdictional stage to have been sexually abused by a parent realistically will not be restored to the parent at the dispositional phase.

The liberty interest of parents in the care, custody, and management of their children, requires fundamentally fair procedures when the state seeks to deprive them of their parental rights. The Due Process Clause requires a hearing. As an aspect of due process, parents are entitled to cross-examination in court by their lawyer, an advocate, not by an impartial examiner.

The child protection law does not abrogate the physician-patient privilege where a report of child abuse is not made pursuant to that law.

193 Mich App 652; 485 NW2d 110 (1992) reversed.

1. Parent and Child — Child Protective Proceedings — Child Witnesses — Cross-Examination — Video Interviews.

Where the probate court in a child protective proceeding makes particularized findings indicating that a child would suffer psychological trauma if forced to testify in court or if cross-examined by attorneys, the court may allow an impartial examiner to conduct a video interview in order to gather the most accurate and complete information.

2. Parent and Child — Child Protective Proceedings — Physician-Patient Privilege.

The Child Protection Law abrogates the physician-patient privilege where such evidence is offered in a civil child protective proceeding resulting from a report made pursuant to the act and is determined to be relevant to the proceeding (MCL 722.624, 722.631; MSA 25.248[4], 25.248[11]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Gary L. Walker,* Prosecuting Attorney, and *David A. Payant,* Assistant Prosecuting Attorney, for the Department of Social Services.

*James E. Nancarrow,* guardian ad litem, for the minor children.

*Peacock, Ingleson & Stenton, P.C.* (by *Cheryl L. Hill*), for Carol Brock.

*Murphy & Clark* (by *F. Gregory Murphy*) for Charles Brock.

Amicus Curiae:

*Robert S. Yampolsky* for the Juvenile Law Section of the State Bar of Michigan.

RILEY, J. The Department of Social Services and the guardian ad litem appeal from the Court of Appeals decision reversing the probate court's orders of jurisdiction and placement of respondents' minor children in foster care.[1] We reverse the Court of Appeals decision and uphold the orders of the probate court.

I

This child protective proceeding was initiated by two reports to the Department of Social Services by respondents' neighbor, who also occasionally baby-sat the minor children. The referent's first contact with the DSS, in November 1990, reported "soft signs" of possible sexual abuse: complaints by the older child that her private areas hurt,[2] blood on her sheets, and the referent's observations that the child's vagina was red and swollen. Because some of the instances described occurred well before the report and because they were not conclusive signs of child abuse, the referent was instructed to contact the DSS if further indications of abuse arose. Shortly thereafter, the referent notified a social worker to report additional concerns. And in January 1991, during an interview with the DSS regarding her concerns, the referent indicated that the child had spontaneously declared

---

[1] 193 Mich App 652; 485 NW2d 110 (1992), lv gtd 440 Mich 873 (1992).

[2] The child uses the term "pookey" to refer to the vaginal and rectal areas.

"Daddy put his finger in my pookey." The DSS, working with the Family Advocacy Office of the K.I. Sawyer Air Force Base, then scheduled a physical examination of the children and notified the respondents. Following a problematic examination indicating recurrent manipulation of the child's rectum,[3] the children were placed in foster care.[4]

The probate court · acquired jurisdiction over both children following a jury finding in an adjudicative proceeding. The foster care of the children was continued in the subsequent dispositional hearing.

Respondents appealed the finding of jurisdiction on various grounds. The Court of Appeals reversed the orders of the probate court and remanded for a new trial. 193 Mich App 652; 485 NW2d 110 (1992). In an order entered July 28, 1992, this Court granted the application for leave to appeal limited to the following two issues:

(1) whether the respondents had a right to confront their daughter at the adjudication stage of these proceedings and, if so, whether that right was violated by the special arrangements approved by the court, and (2) whether the trial court erred in admitting the testimony of respondent Carol Brock's psychologist and physician.[5]

II

Respondents first contend that their constitu-

---

[3] The examination was unremarkable regarding the vaginal examination of the child. An examination of the younger child also was unremarkable.

[4] In the petition to take temporary custody of the children, it is also reported that during an interview with the older child, she told a family advocate and a DSS worker that "Daddy sticks his finger in my p[oo]key."

[5] 440 Mich 873 (1992).

tional rights were violated when video depositions of their older child, then almost four years old, were shown to the jury in lieu of live testimony.[6] Respondents maintain that their right of confrontation[7] was violated because they were denied the right to cross-examine the child during the video deposition, as well as to confront her face to face.

At the hearing regarding special arrangements for testimony of the older child, Lieutenant Robin Presley, a clinical social worker with the Air Force, testified that the child would not be capable of responding to questions asked by attorneys or by the court.[8] Lieutenant Presley also testified that the child would be unable to testify in the courtroom because of trauma stemming from her lack of understanding of the physical aspects of the courtroom, the various people in the courtroom, the consequences of what she would be saying, and the courtroom vocabulary. She further testified that it would be traumatic for the child to be confronted with the alleged perpetrators, her parents, and that this trauma of a courtroom appearance would impair later treatment. Moreover, Lieutenant Presley indicated that she believed that the presence of attorneys during an interview and any cross-examination would also be traumatic and impair further treatment. She opined that questioning by a person skilled in interviewing children would elicit the most complete response.

---

[6] Two video depositions were taken. In the first deposition, the child did not implicate her father. Because she had a cold at that time and was distracted by the camera in the questioning room, a second deposition was taken wherein she did indicate that her father had hurt her "pookey." Both video depositions were shown to the jury.

[7] US Const, Ams V, VI, and XIV; Const 1963, art 1, § 20.

[8] The trial court determined that testimony regarding the effect of courtroom testimony on the child should come from a person with expertise. After voir dire, the court concluded that Lt. Presley's expertise and education qualified her to give her opinion.

Finding Lieutenant Presley's testimony sufficient to establish that the child would suffer psychological harm that might also impair future treatment were she ordered either to testify in court with the parties present or to testify in the courtroom with the jury present but the parents absent, the court, pursuant to MCL 712A.17b(9); MSA 27.3178(598.17b)(9),[9] ordered the child's testimony to be taken by videotape deposition. Pursuant to MCR 5.923(E),[10] the court also found that in order to present the most complete testimony to the finder of fact, an impartial examiner would conduct the deposition.[11]

The Court of Appeals held that in the absence of cross-examination, as well as a face-to-face confrontation, respondents' federal and state due process rights were violated. We disagree.

Child protective proceedings are not criminal proceedings. MCL 712A.1(1); MSA 27.3178(598.1)(1). The purpose of child protective proceedings is the protection of the child, while criminal cases

---

[9] In a proceeding brought pursuant to section 2(b) of this chapter, if, upon the motion of any party or in the court's discretion, the court finds on the record that psychological harm to the witness would occur if the witness were to testify at the adjudication stage, the court shall order to be taken a videotape deposition of a witness which shall be admitted into evidence at the adjudication stage instead of the live testimony of the witness. The examination and cross-examination of the witness in the videotape deposition shall proceed in the same manner as permitted at the adjudication stage.

[10] Impartial Questioner. The court may appoint an impartial psychologist or psychiatrist to ask questions of a child witness at a hearing.

This court rule follows MCR 5.923(D), providing for the use of videotaped depositions and other measures enumerated in MCL 712A.17b; MSA 27.3178(598.17b).

[11] Contrary to the implication by the dissent that the examiner was an advocate of the state, *post* at 125, the psychologist-examiner was selected by the court, and there is no evidence that he was biased against respondents.

focus on the determination of the guilt or innocence of the defendant. *People v Gates,* 434 Mich 146, 161; 452 NW2d 627 (1990). The juvenile code is intended to protect children from unfit homes rather than to punish their parents. *In re Jacobs,* 433 Mich 24, 41; 444 NW2d 789 (1989). Furthermore, the rules applicable in child protective proceedings also differ from those applicable in criminal cases. *Gates, supra* at 157.[12] Although the Sixth Amendment of the United States Constitution provides, "[i]n all *criminal prosecutions,* the accused shall enjoy the right to . . . be confronted with the witnesses against him," because the present case is not a criminal case, we conclude that the Sixth Amendment right of confrontation does not apply.

Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional. The adjudicative phase determines whether the probate court may exercise jurisdiction over the child. If the court acquires jurisdiction, the dispositional phase determines what action, if any, will be taken on behalf of the child. Substantial effort is expended to improve the home situation in order to return children to the custody of their parents if at all possible. See *Jacobs, supra* at 38. Respondents may demand a jury determination of the facts in the adjudicative phase, but no jury is allowed at the dispositional hearings. MCR 5.911. To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that

---

[12] For example, the level of proof required in a probate proceeding is generally a preponderance of the evidence, MCR 5.972(C)(1), while the level required in a criminal case is proof beyond a reasonable doubt. Furthermore, a referee rather than a judge may preside at a probate trial. MCR 5.965(B)(6). In addition, hearsay statements are admissible under certain circumstances in probate proceedings, which do not fall within an exception to the hearsay rule. MCR 5.972(C)(2). The court rules also provide for expedited child protection proceedings. MCR 5.965(A); MCR 5.972(A).

the child comes within the statutory requirements of MCL 712A.2; MSA 27.3178(598.2).[13] MCR 5.972(C)(1).

It is well established that parents have a significant interest in the companionship, care, custody, and management of their children. This interest has been characterized as an element of "liberty" to be protected by due process. *Reist v Bay Circuit Judge,* 396 Mich 326, 342; 241 NW2d 55 (1976).

> Clearly any legal adjustment of their mutual rights and obligations affects a fundamental human relationship. The rights at stake are "protected" and encompassed within the meaning of the term "liberty" as used in the Due Process Clause.

Hence, the question at issue is what procedural due process requirements are implicated in the adjudicative phase of a child protective proceeding wherein a court may acquire jurisdiction over a child.

Although due process often requires confrontation and cross-examination, these are not absolute requirements, *Willner v Committee on Character & Fitness,* 373 US 96, 103-104; 83 S Ct 1175; 10 L Ed 2d 224 (1963) (Goldberg, J., concurring at 106), even in Sixth Amendment analysis. *Coy v Iowa,* 487 US 1012, 1020; 108 S Ct 2798; 101 L Ed 2d 857 (1988) ("rights conferred by the Confrontation Clause are not absolute, and may give way to

---

[13] MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2) provides:

> Jurisdiction in proceedings concerning any child under 18 years of age found within the county:
>
> * * *
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for the child to live in.

other important interests"); *People v Kasben,* 158
Mich App 252, 255; 404 NW2d 723 (1987) (the
right of confrontation may yield to other compel-
ling interests). *Maryland v Craig,* 497 US 836; 110
S Ct 3157; 111 L Ed 2d 666 (1990), establishes that
where there are particularized findings of neces-
sity, face-to-face confrontation is not necessary.[14]
Therefore, the narrow issue presented in this ap-
peal is whether in the absence of face-to-face con-
frontation due process requires an opportunity to
cross-examine during an adjudicative proceeding.

Respondents contend that their right of due
process[15] includes the right to confront the wit-
nesses against them in an adjudicative proceeding.
Although we do not hold that such confrontation
is unnecessary in every case, we are persuaded
that the present factual circumstances support the
probate court's determination that the videotape
deposition of the older child by an impartial exam-
iner did not deprive respondents of their constitu-
tional right of confrontation.[16]

"Due process applies to any adjudication of im-
portant rights." *In re LaFlure,* 48 Mich App 377,
385; 210 NW2d 482 (1973).

> Procedural due process imposes constraints on
> governmental decisions which deprive individuals
> of "liberty" or "property" interests within the
> meaning of the Due Process Clause of the Fifth or
> Fourteenth Amendment.

---

[14] See also *In re Vanidestine,* 186 Mich App 205; 463 NW2d 225
(1990).

[15] US Const, Ams V and XIV; Const 1963, art 1, § 20.

[16] We are not persuaded that language in MCL 712A.17b(9); MSA
27.3178(598.17b)(9), providing that cross-examination of a witness in a
videotape deposition "shall proceed in the same manner as permitted
at the adjudication stage," requires that respondents be guaranteed
the right of cross-examination. While of course permitted and encour-
aged, respondents' opportunity for cross-examination at the adjudica-
tion stage, even in the absence of videotape depositional testimony, is
not absolute but rather is governed by due process considerations.

\* \* \*

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." [*Mathews v Eldridge,* 424 US 319, 332, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

Due process requires fundamental fairness, which is determined in a particular situation first by "considering any relevant precedents and then by assessing the several interests that are at stake." *Lassiter v Dep't of Social Services,* 452 US 18, 25; 101 S Ct 2153; 68 L Ed 2d 640 (1981). Generally, three factors will be considered to determine what is required by due process:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Mathews, supra* at 335.]

An adjudicative proceeding determines whether the probate court may acquire jurisdiction over a child. Hence, the liberty interest at stake is the parents' interest in the management of their children.

The procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of this interest. Upon a finding of jurisdiction, the probate court has several options, one of which is to return the children to their parents. Not every adjudicative hearing results in removal of custody. *In re Perry,* 148 Mich App 601; 385 NW2d 287 (1986). Moreover, in order to

permanently terminate respondents' parental rights, further hearings would be required, and the statutory elements for termination must be proven by clear and convincing evidence. MCL 712A.19b(3); MSA 27.3178(598.19b)(3).

Furthermore, it is uncertain whether the added procedural safeguard, here the opportunity to cross-examine the child, would aid in the truth-seeking goal of the adjudicative hearing. Lieutenant Presley testified that the older child would be incapable of communicating if attorneys questioned her and that she might be traumatized presently and in her future treatment if forced to participate in cross-examination. The probate judge assessed these factors and determined that in the interest of receiving the most complete testimony, the child would not be cross-examined. During the video depositions, respondents' counsel were able to observe the child through a one-way window. Moreover, counsel were allowed to submit questions to the examiner before and during the deposition.[17] Although face-to-face confrontation and cross-examination ensure the integrity of the factfinding process by "subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact," *Craig, supra* at 845, where confrontation causes the child "significant emotional distress," the truth-seeking goal of the Confrontation Clause may be thwarted. *Id.* at 857.[18]

Finally, the interest of the state as *parens pa-*

---

[17] While respondents argue that the submitted questions were not asked in the words suggested or in the manner respondents' counsel would have asked them, respondents base their constitutional challenge on the lack of face-to-face confrontation and cross-examination rather than the failure by the examiner to ask all the specific questions submitted to him by respondents.

[18] See also note, *Videotaping children's testimony: An empirical view,* 85 Mich L R 809 (1987).

*triae* is for the welfare of the child.[19] Although the
fiscal or administrative burden of allowing respon-
dents' counsel to cross-examine the child may be
slight, the governmental interest in protecting her
from trauma is significant. Furthermore, the
state's interest in protecting the child is impeded
by error in the factfinding process. Therefore, the
procedure designed by the probate court to secure
the most accurate testimony furthers the govern-
mental interest in protecting the welfare of the
child.

The Supreme Court of Rhode Island has simi-
larly addressed due process requirements in the
context of a child dependency hearing. *In re James
A,* 505 A2d 1386 (RI, 1986). In *James A,* the
respondent father was accused of sexually molest-
ing his two minor sons. The elder son, then age
five, was found to be a competent witness, but
began crying when the judge began asking him
questions in the presence of counsel. The judge
cleared the chambers and continued questioning in
counsel's absence. Counsel were permitted the op-
portunity to submit questions for cross-examina-
tion after the transcript of the child's interview
with the judge was read back to them. The father

---

[19] The state's interest in protecting the child is aligned with the
child's interest to be free from an abusive environment. See *Craig,
supra* at 852-853; *Vanidestine,* n 14 *supra* at 209.

The child has an interest in the outcome of the factfinding
hearing independent of that of the parent. To be sure, "the
child and his parent share a vital interest in preventing *errone-
ous* termination of their natural relationship." But the child's
interest in a continuation of the family unit exists only to the
extent that such a continuation would not be harmful to him.
An error *in the factfinding hearing* that results in a failure to
terminate a parent-child relationship which rightfully should
be terminated may well detrimentally affect the child. [*Santo-
sky v Kramer,* 455 US 745, 788, n 13; 102 S Ct 1388; 71 L Ed 2d
599 (1982) (Rehnquist, J., dissenting). Emphasis in original,
citations omitted.]

asserted on appeal that the court-prescribed procedure of interviewing the child without affording the respondent the right of confrontation denied him due process of law. The court disagreed. It first recognized that the Sixth Amendment did not guarantee the respondent the right of confrontation or cross-examination in this noncriminal proceeding. *Id.* at 1390. Moreover, whether due process necessitates the opportunity of cross-examination is determined in light of the particular facts and circumstances of the particular case. *Id.* The court noted that in child abuse proceedings, "the rights of parents are a most essential consideration, but we further recognize that the best interests and welfare of the child outweigh all other considerations." *Id.* The son's testimony was invaluable because of his direct knowledge of the facts.

> However, owing to his tender years [five] and the nature of the acts to which he was subjected, the trial justice decided that a routine, in-court examination of the child could result in severe psychological trauma. [*Id.* at 1391.][20]

The court then found that balancing the best interests of the child with the interests of the parents and the state supports the judge's action. *Id.*[21]

Respondents have an important liberty interest

[20] At the time of the video deposition, the child in this case was not yet four years old.

[21] Although the judge attempted to allow the child to testify in open court, and cleared the courtroom only after the child became unable to testify with counsel present, we do not find that that event distinguishes *James A* from the present case. Where the judge makes particularized findings regarding the traumatic effect on a child witness of testifying in a conventional courtroom setting, the judge need not attempt in-court testimony of the child witness and await the effect. See also *In re Michael C,* 557 A2d 1219 (RI, 1989) (the adoption of the same procedure as in *In re James A,* in order to protect a child is a discretionary matter).

in the management of their children that is protected by due process. However, the child's welfare is primary in child protective proceedings. The probate court specifically found that the child in this case would be traumatized if forced to testify with counsel present. Moreover, she would be incapable of testifying because of that trauma. The probate court established arrangements for the child's testimony designed to permit her to testify as completely as possible. Therefore, prohibiting respondents' counsel from cross-examining her did not significantly increase the risk of an erroneous deprivation of respondents' liberty interest.

Because the spirit of confrontation and cross-examination could only be achieved by alternative, nontraditional procedures, deviation from traditional practices should be allowed. In this initial phase wherein the court acquires jurisdiction in order to attempt to alleviate the problems in the home so that the children and the parents can be reunited, we find no abuse of discretion where the probate judge makes particularized findings of necessity requiring testimony of the child victim outside the presence of her parents and their counsel.

III

Respondent Carol Brock next contends that the probate court erred in denying her motion to exclude the testimony of her treating psychologist and psychiatrist. Mrs. Brock asserted her physician-psychologist/patient privilege pursuant to MCL 600.2157; MSA 27A.2157 and MCL 330.1750; MSA 14.800(750). The privilege would generally protect information regarding her treatment for emotional difficulties. The probate judge indicated that although respondent initially authorized the

release to the guardian ad litem, the information was intended for the limited purpose of aiding the guardian in his determination whether to return the younger child to Mrs. Brock's care. The court therefore refused to allow the testimony of the treating doctors on the basis of waiver of the physician-psychologist/patient privilege.[22]

The trial court found, however, that the privilege was abrogated by § 11 of the Child Protection Law.

> Any legally recognized privileged communication except that between attorney and client is abrogated and shall neither constitute grounds for excusing a report otherwise required to be made nor for excluding evidence in a civil child protective proceeding resulting from a report made pursuant to this act. [MCL 722.631; MSA 25.248(11).]

The Court of Appeals reversed the trial court's decision, finding that the privilege was not abrogated by § 11. 193 Mich App 666. The Court held the testimony inadmissible because the report of suspected abuse was not made by a person required to make such a report under § 3 of the Child Protection Law, MCL 722.623; MSA 25.248(3). Furthermore, the testimony was not evidence of neglect or abuse, but rather merely indicated the emotional difficulties suffered by Mrs. Brock. *Id.*

Prior analyses of § 11 of the Child Protection Law, MCL 722.631; MSA 25.248(11), can be construed as supportive of the Court of Appeals deci-

---

[22] We do not reach the issue of limited waiver because we dispose of this issue on other grounds. Furthermore, the Court of Appeals did not analyze this issue and indicated that the prosecutor did not preserve any objection to the lower court's finding because it did not cross-appeal and the record did not contain the waiver document.

sion.[23] The Court of Appeals has found that § 11 does not abrogate the physician-patient privilege where there is no indication that the physician met with respondent as a result of any action taken pursuant to the Child Protection Law. *In re Atkins,* 112 Mich App 528, 543; 316 NW2d 477 (1982). The Court has also delineated two circumstances where § 11 would apply. *In re Tedder,* 150 Mich App 688, 702; 389 NW2d 149 (1986).[24]

> [Section] 11 abrogates a privilege only where a report is required under the act or where the communications subject to a privilege are offered as evidence of neglect or abuse in a child protective proceeding.

However, the Court of Appeals has also opined that where a child protective proceeding results from a report of suspected child abuse, the privilege is abrogated because the case was a proceeding under the Child Protection Law resulting from a report under MCL 722.621 *et seq.*; MSA 25.248(1) *et seq. In re Rogers,* 160 Mich App 500; 409 NW2d 486 (1987).

We disagree with the Court of Appeals reasoning in the present case that the identity of the person initiating the child protective proceeding is determinative of whether § 11 applies. We also disagree with the Court of Appeals reliance on *Tedder, supra,* to conclude that the testimony of respondent's physician and psychologist was inadmissible because it indicated only emotional difficulties rather than evidence of abuse or neglect. 193 Mich App 666.[25]

According to the plain language of § 11, the

---

[23] See OAG, 1977-1978, No 5406, p 724 (December 15, 1978).

[24] See also *In re McCombs,* 160 Mich App 621, 626; 408 NW2d 401 (1987).

[25] The petition for temporary custody alleged a history of mental

physician-patient privilege is abrogated in two instances. The first clearly does not apply in the present case: where a report is otherwise required to be made. Respondents' neighbor was not required to report her suspicions of child abuse pursuant to § 3 of the Child Protection Law.

The second involves evidence in a civil child protection proceeding resulting from a report made pursuant to this act. We disagree with the Court of Appeals finding that this provision does not apply because the child protective proceeding did not result from a report required to be made pursuant to the Child Protection Law. 193 Mich App 666. The Court of Appeals does not recognize that "a report made pursuant to this act" also includes a report made under § 4 of the Child Protection Law, which provides:

> In addition to those persons required to report child abuse or neglect under section 3, any person, including a child, who has reasonable cause to suspect child abuse or neglect may report the matter to the department or a law enforcement agency. [MCL 722.624; MSA 25.248(4).]

Therefore, the report by respondents' neighbor falls within § 4 and is considered "a report made pursuant to this act."

However, this second phrase is open to two distinct interpretations. If the phrase "in a civil child protection proceeding" is considered merely a

---

illness on the part of Mrs. Brock, diagnosed as bi-polar disorder and depression, that was being treated with various psychotropic medications and therapy. The probate court considered *Tedder,* and found that the evidence sought to be introduced satisfied the *Tedder* analysis because there was relevant information in respondent's medical history that would be evidence of abuse or neglect. The probate court also concluded that another ground for admission of the testimony would be as impeachment of respondent's testimony, should that become necessary.

qualifier of "evidence," the privilege shall be abrogated where the evidence results from a report made pursuant to this act. The evidence in the present case would therefore be inadmissible because the treatment of respondent, and therefore the testimony of her doctors, did not result from any action taken pursuant to the Child Protection Law.

If, on the other hand, the entire phrase, "in a civil child protection proceeding resulting from a report made pursuant to this act," qualifies "evidence," then the privilege shall be abrogated where the civil child protection proceeding results from a report made pursuant to this act. The testimony would therefore be admissible because, as explained above, the report initiating the DSS investigation falls under § 4 of the Child Protection Law, and therefore the child protection proceeding resulted from a report made "pursuant to this act."

We are persuaded by this latter interpretation of § 11. The physician-patient privilege is a statutory creation in derogation of common law, and hence will be narrowly construed. *La Count v Von Platen-Fox Co,* 243 Mich 250; 220 NW 697 (1928); *Yount v Nat'l Bank of Jackson,* 327 Mich 342, 347; 42 NW2d 110 (1950). Exceptions to statutory privileges should be broadly construed. *People v Love,* 425 Mich 691, 700; 391 NW2d 738 (1986). Moreover, the purpose of a child protective proceeding is to protect the welfare of the child. *Gates, supra* at 161; *In re Baby X,* 97 Mich App 111, 120; 293 NW2d 736 (1980). It is in the best interests of all parties for the factfinder to be in possession of all relevant information regarding the welfare of the child. The trial court determined that the medical information relevant to the petition for jurisdic-

tion would be admissible. We find no error in this decision.

## IV

In summary, we reverse the Court of Appeals decision and uphold the orders of the probate court. The special arrangements established by the probate court to elicit the most complete response by the older child did not violate her parents' procedural due process rights. Where the probate court makes particularized findings that indicate that a child would suffer psychological trauma if forced to testify in court or if cross-examined by attorneys, the court may allow an impartial examiner to conduct a video interview in order to gather the most accurate and complete information.

Furthermore, the probate court did not err in allowing Mrs. Brock's physician and psychologist to testify regarding her history of emotional difficulties. The present proceeding was initiated by a report to the DSS by respondents' neighbor. The testimony is therefore evidence in a civil child protective proceeding resulting from a report made pursuant to the Child Protection Law, and admissible pursuant to § 11 of the Child Protection Law if determined to be relevant to the proceeding.

Reversed.

CAVANAGH, C.J., and BRICKLEY, BOYLE, GRIFFIN, and MALLETT, JJ., concurred with RILEY, J.

LEVIN, J. (*dissenting*). The "initial phase wherein the [probate] court acquires jurisdiction"[1] of a child is critical. Once a probate court acquires jurisdiction, its decision at the dispositional phase

---

[1] *Ante,* p 115.

is largely screened from appellate review.[2] I therefore disagree with the effort of the majority to minimize the significance of the jurisdictional phase.

Custody of a child, found at the jurisdictional stage to have been sexually abused by a parent, will not—viewed realistically—be restored to the parent at the dispositional phase.

The United States Supreme Court has said that the liberty interest of parents in the care, custody, and management of their children, requires fundamentally fair procedures when the state seeks to deprive them of their parental rights.[3] It is therefore beside the point that parental rights termination proceedings are not criminal proceedings, and thus parents may not invoke the Confrontation Clause.[4] The Due Process Clause requires a "hearing" when the state seeks to terminate parental rights.[5]

---

[2] *In re Cornet,* 422 Mich 274; 373 NW2d 536 (1985), adopting the clearly erroneous standard of appellate review for parental rights termination proceedings. See also *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989), reiterating that an appellate court should not reverse the findings of a trial court unless the findings are clearly erroneous.

[3] *Santosky v Kramer,* 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982). The Court disapproved New York's parental termination standard that required a showing by a fair preponderance of the evidence to support a finding that a child had been permanently neglected. The Court concluded that a parent's interest in a child was "fundamental" and therefore protected by the Due Process Clause. As a result, the state's burden of proof was the heightened clear and convincing evidence standard, rather than a fair preponderance.

[4] *Ante,* p 108.

[5] *Stanley v Illinois,* 405 US 645, 649; 92 S Ct 1208; 31 L Ed 2d 551 (1972). The Court disapproved an Illinois law that declared the children of unmarried fathers, upon the death of the mother, to be dependents, without a hearing on parental fitness and without proof of neglect, although such a hearing and proof were required before the state could assume custody of children of married or divorced parents or unwed mothers. The Court held that the law violated the Due Process Clause by assuming that unwed fathers were unsuitable and neglectful parents and that the father was entitled to a hearing under the Due Process Clause.

The United States Supreme Court has said that "[i]n *almost every setting* where important decisions turn on questions of fact, due process requires an opportunity to confront and *cross-examine* adverse witnesses."[6] (Emphasis added.)

The United States Supreme Court has also said that where the "evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy," the right to show that the testimony is untrue depends on cross-examination. The Court has observed that it has been "zealous to protect these rights from erosion. It has spoken out *not only in criminal cases, . . .* but also in *all types of cases* where administrative . . . actions were under scrutiny."[7] (Emphasis added.)

---

[6] *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970) (welfare recipients were entitled to a hearing before termination of benefits). See also *Interstate Commerce Comm v Louisville & Nashville R Co,* 227 US 88, 93-94; 33 S Ct 185; 57 L Ed 431 (1913) (overturned a decision by the ICC because the railroad did not have a hearing before the ICC set aside certain class and commodity rates as being unreasonable); *Willner v Committee on Character & Fitness,* 373 US 96, 103-104; 83 S Ct 1175; 10 L Ed 2d 224 (1963) (the plaintiff, who had been denied admission to the New York bar, was entitled to a hearing at which he could confront and cross-examine witnesses).

[7] *Greene v McElroy,* 360 US 474, 496-497; 79 S Ct 1400; 3 L Ed 2d 1377 (1959). The plaintiff was an aeronautical engineer employed by a private manufacturer that produced goods for the armed services. The Court struck down procedures, used to strip plaintiff of his security clearance based on his alleged Communist sympathies, because the procedures denied him access to much of the information adverse to him and denied him an opportunity to cross-examine witnesses.

See also *Mathews v Eldridge,* 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976). The Court held, under the Fifth Amendment, that the Due Process Clause required that recipients of Social Security disability benefits be provided an opportunity for an evidentiary hearing before benefits were terminated. The Court pronounced a multipronged test to determine how much process is due: the private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used; the probable value, if any, of additional or substitute procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

After noting that both confrontation and cross-examination assure the integrity of the fact-finding process, the United States Supreme Court, in *Coy v Iowa,* 487 US 1012, 1020; 108 S Ct 2798; 101 L Ed 2d 857 (1988),[8] said:

> [F]ace-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

Although *Coy* was a criminal prosecution, the rationale underlying the foregoing statement applies as well to the right of cross-examination in this case where the child made inconsistent statements at various times, including during the two video depositions.[9]

No case has been cited in which any court, in parental rights termination proceedings, has held that parents may be deprived of cross-examination on the basis of a *prediction* that the child will be traumatized by cross-examination, especially a prediction in the form of an opinion so clearly grounded in theory and not in experience. The Court of Appeals observed that "Lieutenant Presley stated that although she had never seen a child witness testify, she based her conclusion that

---

[8] The Court held that an Iowa court procedure placing a screen between a child witness testifying in a sexual abuse case so that the witness could not see the defendant violated the defendant's right to confrontation absent individualized findings that the particular child witness needs special protection.

[9] A probate court proceeding, to acquire jurisdiction of a child on the basis that a parent abused the child, may be the prelude to a criminal prosecution. See *People v Gates,* 434 Mich 146; 452 NW2d 627 (1990), where this Court held that the principles of collateral estoppel do not bar the prosecution of a parent after the jury found no jurisdiction in a probate court parental rights termination proceeding.

complainant would suffer psychologically on information she had accumulated *as a student.*"[10] (Emphasis added.)

Lt. Presley was not an independent expert, but one of the persons who first questioned the child after a report was made to the authorities that she had been sexually abused.

Lt. Presley's testimony shows that her views were based on general assumptions about who is qualified to question a child alleged to have been sexually abused. Her assumptions are similar to the assumptions of the Iowa Legislature in enacting a statutory presumption that child victims of sexual abuse cannot endure in-court confrontation with their alleged abusers. That assumption was disapproved in *Coy v Iowa, supra,* where the United States Supreme Court said that there must be a showing of harm to the particular child by in-court confrontation before alternative out-of-court procedures may be employed to question the child. The requirement of a specific showing of harm was reiterated by the Court in *Maryland v Craig,* 497 US 836; 110 S Ct 3157; 111 L Ed 2d 666 (1990). Carefully read, Lt. Presley's testimony is more general than it is specific respecting the child in the instant case.

In the case, cited by the majority, claimed to be factually most in point, *In re James A,* 505 A2d 1386, 1391 (RI, 1986), "the attorneys were asked to leave *only when it was obvious* that the child had become emotional." (Emphasis added.) Here, the probate court ruled, before the child took the stand, that the parents' lawyers could not cross-examine her. Because the court ruled before the child testified, there was no evidence that she had in fact been traumatized by direct examination by a lawyer who was an advocate for the people or by

[10] 193 Mich App 652, 655; 485 NW2d 10 (1992).

cross-examination by a lawyer who is an advocate for the parents.

In this regard, it is noteworthy that, in the instant case, the child, at the first interview, "denied that anyone had ever touched or hurt her pookey."[11] After the child had begun "therapy," the probate court ordered a second interview, during which, the Court of Appeals said, there was "prodding."[12] In light of that pretrial history, the state cannot properly be heard to express concern, absent evidence other than an opinion grounded in theory, that lawyers[13] would necessarily traumatize the child by questioning her.

The parents are entitled, as an aspect of due process, to cross-examination by their lawyer, an advocate, not by an "impartial" "trained" examiner, unless possibly if there were evidence that cross-examination by a lawyer had *in fact* resulted in the child being traumatized or unable to go on. And even then, the "trained" examiner should be one selected by the parents, not a "trained" examiner selected by the court. And, of course, paid for by the state when the parents are indigent.

The parents are entitled at least to cross-examination by a "trained" examiner who is an advocate for the parents, no less an advocate for the parents than the trained persons who before the trial "examined" the child for the state, who testified at the trial as advocates for the state. Cross-examination by an "impartial" person, a person who is not supposed to be an advocate, does not comport with the requirements of due process.

Finally, for the reasons set forth in the opinion

---

[11] *Id.,* p 656.

[12] *Id.*

[13] In the instant case, the lawyers representing the parents were appointed by the probate court. Surely, the court appointed lawyers in whom it had confidence.

of the Court of Appeals,[14] I would affirm its decision that the child protection law[15] does not abrogate the physician-patient privilege other than where a report of child abuse has been made pursuant to that law.

---

[14] *In re Brock, supra,* p 666.

[15] MCL 722.621 *et seq.*; MSA 25.248(1) *et seq.*